778 P.2d 801

Kenneth B. HODGES,
Claimant–Appellant,

v.

W.B. SAVAGE RANCHES, Employer,
and United Pacific Insurance
Company, Defendants–Respondents.

No. 17674.

Supreme Court of Idaho.

Aug. 11, 1989.

Randy John Stoker, Twin Falls, for claimant-appellant.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for defendants-respondents. Thomas V. Munson argued.

BAKES, Chief Justice.

Claimant, Kenneth Hodges, appeals from the decision of the Industrial Commission granting him additional permanent disability, but denying claimant's request for total permanent disability under the odd-lot doctrine.

Claimant was injured on April 1, 1983 while working as a farm mechanic when he slipped and fell while loading a grain truck. As a result of the accident claimant suffered a fractured right hip, right elbow, and a compression fracture of his lower back at L-4. Dr. Howar, an orthopedic surgeon, performed an open reduction and internal fixation on claimant's right hip on April 19, 1983.

As a result of the injury, claimant entered into a compensation agreement with the surety on February 15, 1984, which awarded him permanent disability of twenty-seven percent of the whole man. This agreement was approved by the Industrial Commission on February 24, 1984.

Because of continued problems with his hip, claimant underwent a total arthroplasty (hip replacement) in August 1984. In October 1984, claimant was released to return to work, first on a half-time basis and subsequently on a full-time basis. Claimant then entered into a second compensation agreement with the surety on January 25, 1985, which awarded him an additional sixteen percent of the whole man, making his total disability forty-three percent of the whole man.[1] This agreement was approved by the Industrial Commission on February 1, 1985.

On November 19, 1986, claimant filed an Application To Modify Award pursuant to I.C. § 72–719, seeking to modify the two compensation agreements entered into previously. The application, while not precisely identifying any of the grounds set out in I.C. § 72–719 for modifying an award, generally raised the following issues which were tried by the Commission, as set forth in the Commission's decision.

### Issues
#### II

Issues to be decided herein are:
(1) Whether there has been a change in the nature or extent of Claimant's injury or disablement since the compensation agreements were approved by the Commission, and the amount of such change, if any; and

---

1. The Commission found that the second compensation agreement was prepared by the surety based upon a misinterpretation of the second report of the surgeon, Dr. Howar, after the hip replacement surgery. The surety misinterpreted Dr. Howar's second rating "to mean that claimant had an additional partial impairment to his right lower extremity of forty percent, or sixteen percent of the whole man. Pursuant to this misinterpretation, claimant was awarded an additional sixteen percent of the whole man by the second compensation agreement, for a total award of forty-three percent of the whole man."

However, as the Commission found in Finding XXIV, Dr. Howar's second evaluation and rating, which was after the successful hip surgery, determined that "claimant had a permanent physical impairment of twenty-four percent of the whole man, an overall reduction of three percent of the whole man since his first rating before the first agreement was signed, and not that claimant had a permanent partial impairment rating of forty-three percent of the whole man, as the surety had concluded and had represented to the claimant as the basis for entering into the second agreement."

(2) Whether the two compensation agreements, dated February 15, 1984, and January 25, 1985, considered both Claimant's degree of permanent physical impairment and the extent of his permanent partial disability based on non-medical factors and were thus final and conclusive on those matters;

(3) Whether the Commission should review this case under I.C. § 72–719(3) in order to correct a manifest injustice.

After a hearing on these factual issues the Commission entered its Findings of Fact and Conclusions of Law in which it found, based upon expert medical testimony, "that claimant has not had a change in condition, either physical or mental, since he entered into the two compensation agreements, that would allow the commission to modify the amount of claimant's personal physical impairment, or order an award of any degree of permanent mental impairment." Thus the Commission concluded that that grounds for modifying the prior two awards pursuant to I.C. § 72–719 did not exist.

The Commission then addressed the second issue of whether or not the two compensation agreements had taken into consideration both claimant's degree of permanent physical impairment, and his non-medical factors, and then stated that:

Although it can be argued that the language of the two compensation agreements *appears* to be clear and covers both claimant's permanent physical impairment and permanent partial disability and should thus be considered final and conclusive on those issues, the commission finds that to do so would perpetrate a manifest injustice. Under the authority of I.C. § 72–719(3), the commission desires to review this case to correct a manifest injustice caused by these compensation agreements. (Original emphasis.)

Then, after observing that the surety had misinterpreted Dr. Howar's second rating to the substantial benefit of the claimant, the Commission nevertheless conlcuded that after taking into account claimant's non-medi-cal factors, such as age, education, work experience, and the other non-medical factors provided for in I.C. § 72–425, which were described in great detail, the Commission concluded that claimant had a total permanent partial disability equal to fifty-nine percent of the whole man. This finding was based on the claimant's permanent physical impairment of twenty-four percent, and non-medical factors of thirty-five percent.

■ Claimant contends that the commission erred 1) in failing to find him to be totally disabled under the odd-lot category, 2) in failing to make specific findings of fact, and 3) in failing to retain jurisdiction over issues relating to future medical problems. The claimant contends that he has established a prima facie case of total disability under the odd-lot doctrine. In *Rost v. Simplot*, 106 Idaho 444, 680 P.2d 866 (1984), this Court held that it is the "claimant's burden to establish a prima facie case that he is a member of the odd-lot category," and that in order to present a prima facie case of odd-lot total disability, that claimant must prove the unavailability of any suitable work. *See also Gordon v. West*, 103 Idaho 100, 645 P.2d 334 (1982) ("a claimant must do more than assert that he cannot perform his previous type of employment in order to qualify as a odd-lot worker. As in the *Lyons* case he must show what other types of employment he has attempted. The Commission, as the fact finder, must consider whether the claimant has tried and could not perform other work.") Only when the claimant makes out a prima facie case, does the burden shift to the employer to show that suitable work is regularly and continuously available to the claimant. *Rost v. Simplot*, 106 Idaho at 445, 680 P.2d at 867. On appeal this court will review the record most favorably to the party who prevailed below. *Johnson v. Bennett Lumber*, 115 Idaho 241, 766 P.2d 711 (1988).

■ At the time of the hearing before the Commission, the claimant was regularly employed as a school bus driver. Claimant testified at the hearing that for the last two weeks of the school year, he also drove

a farm tractor for several hours a day between school bus runs. Claimant further testified that he had free-lanced as a mechanic, and just prior to the hearing, he had removed and replaced the engine and transmission from his pickup truck by himself. Claimant produced no evidence of the unavailability of any suitable work. In fact, his evidence indicated otherwise. The Commission found that claimant failed to present a prima facie case of odd-lot, because "there are jobs readily available in claimant's community that claimant could perform within his work restrictions." The record supports the Commission's findings, and the Industrial Commission determination that claimant's disability did not bring him within the odd-lot doctrine is affirmed. *Huerta v. School District # 431*, 116 Idaho 43, 773 P.2d 1130 (1989).

 Claimant next argues that the Industrial Commission failed to make explicit findings of fact to support its decision, and as such, the case must be remanded. *Iverson v. Farming*, 103 Idaho 527, 650 P.2d 669 (1982). In the instant case, the findings of the Commission were substantial, consisting of approximately seventeen pages, and included a detailed explanation of claimant's employment and medical background, his skills and work experience, and his age, education and other personal factors. The Commission's findings further included the evaluations of all attending physicians. The findings of the Industrial Commission were sufficiently specific and adequate.

 Claimant further argues that the commission erred in not retaining jurisdiction, citing *Reynolds v. Browning Ferris Industries*, 113 Idaho 965, 751 P.2d 113 (1988). We disagree. In *Reynolds*, this Court stated: "In a situation where the claimant's impairment is progressive and, therefore, cannot adequately be determined for purposes of establishing a permanent disability rating, it is entirely appropriate for the Industrial Commission to retain jurisdiction until such time as the claimant's condition is nonprogressive." However, under I.C. § 72-425, the Commission is allowed to make an appraisal of an "injured employee's present and probable future ability to engage in gainful activity" and base its evaluation rating upon that appraisal. *See Graybill v. Swift & Co.*, 115 Idaho 293, 766 P.2d 763 (1988). In arriving at its disability rating of fifty-nine percent in this case, the Commission considered the possibility of future surgery to repair the total arthroplasty. Consequently, we conclude that the Industrial Commission did not err in entering a final award without retaining jurisdiction.

The Commission's order finding that claimant's permanent disability is fifty-nine percent of the whole man is supported by substantial competent evidence and is affirmed.

BISTLINE and JOHNSON, JJ. concur.

HUNTLEY, J., fully concurred prior to his resignation on August 7, 1989.

SHEPARD, J., sat but did not participate due to his untimely death.